UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD R. SMITH,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO.   C06-5311KLS

ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS

    Plaintiff, Edward R. Smith, has brought this matter for judicial review of the denial of his application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

    Plaintiff currently is fifty-three years old.[1] Tr. 26. He has an eighth grade education and past work

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

experience as a crane operator, truck driver, and logger. Tr. 15, 62, 67, 75.

On August 16, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as of August 22, 2001, due to a bad back, smashed foot, bad elbow, mental anguish, and high blood pressure. Tr. 14, 26, 56-58, 61.  His application was denied initially and on reconsideration. Tr. 26-28, 36. A hearing was held before an administrative law judge ("ALJ") on February 1, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 360-89.

On August 17, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

    (1)    at step one of the disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

    (2)    at step two, plaintiff had "severe" impairments consisting of an elbow fracture, plantar dislocation, third metatarsal fracture, and obesity;

    (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    at step four, plaintiff had the residual functional capacity to perform a significant, but not full, range of light work, which precluded him from performing his past relevant work; and

    (5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 22A-25. Plaintiff's request for review was denied by the Appeals Council on April 4, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On June 2, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

    (a)    the ALJ erred in finding plaintiff had no "severe" mental impairments and in finding his lower back condition was not "severe";

    (b)    the ALJ erred in rejecting the opinion of H. Richard Johnson, M.D.;

    (c)    the ALJ erred in assessing plaintiff's credibility;

    (d)    the ALJ erred in assessing plaintiff's residual functional capacity; and

    (e)    the ALJ erred in finding plaintiff capable of performing other work existing in

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

ORDER
Page - 2

significant numbers in the national economy.

The Court disagrees the ALJ erred in determining plaintiff to be not disabled, and thus, for the reasons set forth below, hereby affirms the ALJ's decision.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Analysis Was Proper

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step two of that process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

A.	Plaintiff's Mental Impairments

Plaintiff argues the ALJ erred in finding he had no severe mental impairments. The Court disagrees. In making this finding, the ALJ noted that while plaintiff had "complained of some symptoms," he had "not received any mental health treatment." Tr. 20. The ALJ went on to note the medical opinion source evidence in the record (Tr. 21-22), all of which supports his determination that none of plaintiff's alleged mental impairments were severe. The Court finds the ALJ's determination in this regard is supported by the substantial evidence in the record.

For example, in late September 2002, plaintiff underwent a psychiatric evaluation. He reported that he had "never received any mental health treatment either psychotherapy or medication management." Tr. 232. Plaintiff also reported that he had been "medicating his pain and anxiety with beer," drinking up to "12 to 18 beers per day" over the past several years. Id. He denied symptoms consistent with psychosis mania or hypomania. Id. He further denied any psychiatric hospitalizations, psychiatric emergency room visits, and history of suicidal or homicidal ideas, gestures or attempts. Id.

During the mental status examination, plaintiff was alert and oriented, maintained good eye contact, and exhibited no psychomotor agitation or retardation. Tr. 233. While his affect was angry and "somewhat irritable," his speech was normal, fluent and goal directed, with no tangentiality or circumstantiality. Id. In addition, although plaintiff's insight was fair and his judgment was poor, his concentration and attention were both good, he denied hallucinations, and no acute or chronic delusions were noted. Id. Further, he showed no ideas of reference, thought withdrawal, thought broadcasting, flight of ideas, or looseness of associations. Id. Finally, plaintiff's memory appeared to be intact. Id.

Plaintiff was diagnosed with a major depressive disorder, alcohol abuse and a global assessment of functioning ("GAF") score of 60. Id. A mental functional assessment, set forth in relevant part below, also was offered:

> Currently there are no mental health symptoms precluding the claimant from participating in a vocational rehabilitation program or returning to work. At the current time it is difficult to say if the claimant would benefit from mental health treatment. . . .
>
> The claimant needs to participate in alcohol treatment. He does not currently voice an interest in participating in substance abuse treatment at this time. It is likely that if the claimant continues to abuse alcohol that this will retard his ability to re-integrate into the work force.

Tr. 234.

ORDER
Page - 4

Plaintiff underwent a psychological evaluation performed by Brian W. Judd, Ph.D., in late October 2002. Again, plaintiff denied any prior history of treatment for depression or other mental or emotional disorders. Tr. 236. His clothing was adequate and his speech was clear, coherent and goal directed. Tr. 237. While plaintiff exhibited limited eye contact, he did note "some improvement in his overall mood secondary to reimplementation" of his Washington state Department of Labor and Industries benefits. Tr. 237-38. He was oriented, denied any suicidal ideation, substantial anxiety or hallucinations, and, although he "demonstrated marked difficulty performing serial subtractions," his "[r]etention and enactment of a 3 step command was grossly intact." Tr. 238.

With respect to mental diagnoses and functional assessment, Dr. Judd opined as follows:

> I am disinclined to believe that he is experiencing a major depressive episode at the present time in part due to his reported improvement in mood secondary to resumption of L & I [Labor and Industries benefits]. As such, I believe he is demonstrating an Adjustment Disorder with Depressed Mood (309.0) secondary to functional limitations and stressors associated with his injuries. In addition, he appears qualified for a diagnosis of Alcohol Abuse (305.00) rule out Alcohol Dependence (303.90).
>
> In general, Mr. Smith [sic] primary functional limitations appear to arise from the experience of chronic pain secondary to injuries to his foot and elbow. Despite difficulties with ambulation and movement of his left arm, Mr. Smith appears to be relatively independent in functioning around the house. While attention and concentration appears to be diminished, he reports a range of activities which suggest that he is able to function relatively independently. He has experienced a significant loss in self-esteem related to his inability to provide for the financial needs of the household. As such, I believe that alleviation of pain, resumption of employment, and alleviation of financial stressors would result in significant remission of his depressed mood.

Tr. 239.

A treatment note from late November 2002, states that plaintiff reported having been "under a lot of stress," because he was "not getting paid from L&I." Tr. 241. He was noted to be alert and oriented and in no acute distress, and was diagnosed with "[d]epression, situational." Id. Finally, the record contains a psychiatric review technique form completed by Anita M. Peterson, Ph.D., a non-examining consulting psychologist, in early December 2002. Based on Dr. Peterson's review of the record, she found plaintiff to have a non-severe adjustment disorder with depressed mood and alcohol abuse, neither diagnosis of which resulted in any mental functional limitations. Tr. 264, 267, 272, 274-76.

Plaintiff first takes issue with the ALJ's reliance on Dr. Peterson's report in finding that he had no severe mental impairment. See Tr. 22. Specifically, plaintiff asserts Dr. Peterson sets forth no basis for the

ORDER
Page - 5

1  conclusion she reached regarding impairment severity.  The notations Dr. Peterson made to the form she
2  completed, however, do reveal that she relied on other medical evidence in the record regarding plaintiff's
3  mental health issues.  See Tr. 276.  Plaintiff argues these notations are cryptic and lacking any supporting
4  documentation.  Clearly, however, what she did write at the very least relates to those findings contained in
5  Dr. Judd's report.  As such, plaintiff's assertion here is without merit.

6  Plaintiff further implies that Dr. Peterson was inconsistent by on the one hand diagnosing him with
7  mental health impairments, and on the other hand finding those mental health impairments did not result in
8  any functional limitations.  The undersigned finds no inconsistency here.  Merely because a claimant may
9  have been diagnosed with an impairment, does not in itself necessarily mean he or she is limited, let alone
10 disabled, thereby.  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment
11 is insufficient proof of disability).

12 Plaintiff also criticizes Dr. Peterson's opinion for being comprised merely of simple "check-the-
13 box" assessments.  While an ALJ certainly may validly discount a medical source opinion on this basis, the
14 ALJ need not do so, especially where, as in this case, the weight of the medical evidence in the record
15 supports that opinion.  See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for
16 individualized medical opinions over check-off reports).  Accordingly, the undersigned does not find Dr.
17 Peterson's opinion to be essentially useless as plaintiff asserts.

18 Plaintiff next asserts that the other two evaluations noted above contain evidence that his mental
19 health conditions have more than a minimal effect on this ability to do basic work activities, particularly
20 those that require attention and concentration.  Contrary to plaintiff's assertion, however, neither of those
21 two evaluators found his mental health impairments would preclude him from returning to work, nor did
22 they note any significant functional limitations resulting therefrom.  With respect to the issue of plaintiff's
23 attention and concentration, those two areas were noted to be good in late September 2002.  Further, while
24 Dr. Judd did state that attention and concentration appeared to be diminished, he also noted that plaintiff
25 reported a range of activities suggesting an ability to function relatively independently, and that resumption
26 of employment would result in significant remission of his depressed mood.  Thus, the ALJ did not err in
27 declining to find any significant mental functional limitation here.

28

B.	Plaintiff's Back Impairment

Plaintiff contends the ALJ erred in finding that the record did "not support the severity of any back-related impairment." Tr. 20.  To support this contention, plaintiff points to the physical examination report completed by H. Richard Johnson, M.D., in mid-December 2003.  In particular, plaintiff relies on the fact that Dr. Johnson's review of his medical history revealed the following back-related conditions:

1.	Contusion of low back secondary to industrial injury of 10/6/76.

2.	Probable pre-existing spondylolysis at L5.

3.	Probable post-traumatic grade 1 spondylolisthesis of L5 on S1, secondary to number 1.

4.	Status post-op L5 to sacrum posterior lateral fusion to treat number 3.

5.	Chronic low back pain secondary to residuals of industrial injury of 10/6/76.

6.	Cervical strain/sprain secondary to industrial injury of 2/8/92, resolved.

Tr. 311-12.  Plaintiff further notes Dr. Johnson's report indicated that he had been rated "at Category 4 for Permanent Dorso-Lumbar and Lumbosacral Spine Impairments" in early July 1981, and his examination of plaintiff's low back revealed the presence of tenderness and muscle spasm. Tr. 301, 311.

This evidence, plaintiff asserts, shows that while his low back condition may not necessarily have been disabling in itself, in combination with his mental health conditions and the other impairments the ALJ found to be severe, it also should have been found to be severe.  Once again, plaintiff misses the point.  A mere diagnosis of an impairment, including possible symptoms stemming therefrom, will not result in a finding of severity, if not also accompanied by evidence of actual work-related limitations.  Plaintiff points to no such limitations found by Dr. Johnson, nor does his report indicate any specifically related to the low back condition.  Thus, while Dr. Johnson did opine that plaintiff was currently unemployable on a regular and continuous basis at any work level, he did not articulate his bases for that opinion.  Further, no other medical source in the record diagnosed plaintiff with any back impairment, let alone find that he was in any way limited by or disabled because of it.

Plaintiff further asserts the ALJ found his low back condition did not meet the requirements for being a severe impairment, because it first onset was more than twenty years ago and was not well-documented in the medical records.  However, plaintiff does not cite to where in his decision the ALJ made this finding, nor does a review of that decision reveal such a finding.  Even if the ALJ did so find though,

1  there would be no error here.  First, plaintiff has failed to show that the low back impairments noted above
2  continued to the present or caused work-related limitations that continued to the present.  Thus, diagnoses
3  made some twenty years ago or so are highly suspect at best in terms of their relevancy to determining the
4  severity of plaintiff's current medical conditions.

5  Second, the very fact that plaintiff's alleged back impairment is not well-documented in the record
6  indicates a finding of severity is not supported.  That is, at step two plaintiff has the burden of proof on the
7  issue of severity, and his failure to produce objective medical evidence of such is highly indicative that he
8  has failed to meet this burden.  As such, the Court rejects plaintiff's assertion that the ALJ ignored highly
9  detailed, probative evidence that clearly showed his alleged back impairment to be severe, and finds his
10 claim that the ALJ improperly substituted his lay opinion for that of a medical expert to be without merit.
11 See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ
12 may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and
13 Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for
14 competent medical opinion).

15 II.     The ALJ Properly Evaluated the Opinion of Dr. Johnson

16 The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
17 medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the
18 record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the
19 ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must
20 be upheld."  Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.
21 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact
22 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts
23 "falls within this responsibility."  Id. at 603.

24 In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
25 supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a
26 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
27 thereof, and making findings."  Id.  The ALJ also may draw inferences "logically flowing from the evidence."
28 Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the

1  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

2  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

As noted above, Dr. Johnson examined plaintiff in mid-December 2003. During the examination, plaintiff was noted to be in "moderate distress." Tr. 310. While he was observed to have "difficulty going up stairs" and was "unable to toe walk on the right side," plaintiff could heel-to-toe walk satisfactorily and his ankle strength was satisfactory as well. Id. Plaintiff had no areas of tenderness or spasm in his neck or tenderness in his left elbow and shoulder, and range of motion in that shoulder was full. Id. Sensation also was intact in his left upper extremity. Id.

In terms of plaintiff's low back, Dr. Johnson noted he had paravertebral muscle spasm throughout his lumbar region and tenderness in his sacroiliac joints. Tr. 311. However, straight leg raise testing was negative bilaterally, the general strength in his lower extremities was normal, and lower extremity deep tendon reflexes were symmetrical. Id. With respect to plaintiff's right foot, decreased sensation was noted,

although alignment of the foot itself was felt to be normal. Id.  There was no tenderness or swelling in the right foot, and ligaments in the right ankle and mid-foot region were stable, albeit with some limitation of motion noted. Id.

In addition to the diagnoses noted above, Dr. Johnson also diagnosed plaintiff with the following pertinent physical impairments:

> 7. Crush injury to right foot with Lis Faranc's fracture-dislocation secondary to industrial injury of 8/22/01.
> 8. Status post-op open reduction internal fixation of right foot to treat number 7.
> 9. Early post traumatic degenerative joint disease of right mid foot secondary to residuals of number 7.
> 10. Nerve damage to right foot secondary to number 7.

Tr. 312.  In terms of employability and disability, Dr. Johnson opined in relevant part as follows:

> . . . Employability: Mr. Smith is currently unemployable on a regular continuous basis at any work level.
>
> . . . Disability: Using the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, and given his limited range of motion about the elbow, he has a 7% impairment of the left upper extremity.
>
> I agree . . . that his ongoing right foot problems qualify him for at least an 8% permanent partial disability based on the whole person.

Id.

With respect to Dr. Johnson's report and opinion, the ALJ found as follows:

> The undersigned gives no weight to this opinion.  It is inconsistent with the weight of the record and inconsistent with [the] claimant's treating physician's opinion.  This is a litigation opinion that was purchased to bolster [the] claimant's L&I claimant [sic].

Tr. 20.  Plaintiff focuses on the ALJ's statement that the opinion Dr. Johnson provided was a "litigation opinion that was purchased to bolster" his L&I claim, to argue the reasons the ALJ gave for rejecting that opinion were not sufficient or legitimate.  It is true that absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.").  Thus, because the ALJ pointed to no evidence of actual improprieties, nor does it appear the record contains any, this reason for rejecting Dr. Johnson's opinion was not legitimate.

As can clearly be seen, however, immediately prior to providing this reason as a basis for rejecting Dr. Johnson's opinion, the ALJ expressly noted that his opinion was inconsistent with the weight of the evidence in the record, including the opinion of plaintiff's treating physician. Indeed, no medical source in the record found plaintiff to be disabled or unable to perform any work due to his low back impairment, or any of his other physical impairments for that matter.

While plaintiff's treating physician did find him unable to return to work for short periods of time due to his right foot impairment, none of those periods lasted for the required amount of time to establish disability. See Tr. 161-62, 164, 166, 168, 178-81, 183, 186, 188-92; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (medically determinable impairment must be expected to result in death or must last or be expected to last for continuous period of not less than twelve months). In addition, no medical source in the record other than Dr. Johnson, including plaintiff's own treating physician, found plaintiff to have any significant physical limitations caused by a low back impairment. See Tr. 154-55, 158-62, 164-68, 178-83, 186, 188-92, 205-06, 208, 211-12, 214, 224-27, 229, 287-89, 291, 293-95.

The ALJ, furthermore, validly pointed out the contrast between Dr. Johnson's own "mild objective findings" and the multiple impairments with which he assessed plaintiff and from which he found plaintiff to be disabled. Tr. 20; See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimants capabilities is clear and convincing reason for not relying on that functional assessment); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). Although plaintiff makes much of the fact that Dr. Johnson conducted an independent medical evaluation, that alone is not a sufficient basis for challenging the ALJ's findings. Indeed, the opinions provided by the other medical sources in the record, the majority of which, as noted above, contradict those of Dr. Johnson, appear to have been independently produced as well. As such, the Court rejects plaintiff's contention that the ALJ ignored Dr. Johnson's report and finds no error on the ALJ's part here.

III.     The ALJ Did Not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ provided a number of reasons for not finding plaintiff to be fully credible. For example, the ALJ noted that plaintiff had not been entirely compliant with recommended treatment for his right foot injury, pointing to evidence in the record that plaintiff had been walking with his cast and working on his car against the medical advice of his treating physician. Tr. 17. Failure to assert a good reason for not following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that it is unclear how merely putting weight on a cast can constitute a lack of credibility. However, plaintiff's treating physician specifically noted in early October 2001, that the cast looked "dirty plantarly with an are [sic] of wear at the plantar indicating" plaintiff had been walking on it "against medical advice." Tr. 187. Plaintiff points to one treatment note, dated October 15, 2001, wherein his cast was observed to be clean after he was warned to not bear weight with that foot. Tr. 184. However, it seems the cast was found to be clean before that particular warning was given. Indeed, just two weeks

later, plaintiff's treating physician commented that his wife stated he had not been elevating his foot as he should have done, because he had "been working on his car against my advice." Id.

The ALJ, furthermore, noted a three and a half month gap in plaintiff's medical treatment record between mid-December 2002 and early April 2003, and pointed to the fact that plaintiff had never received any mental health treatment, despite complaints of mental functional limitations. Tr. 19-21. Failure to assert a good reason for not seeking treatment also "can cast doubt on the sincerity of the claimant's pain testimony." Fair, 885 F.2d at 603; see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ also gave "great weight" to plaintiff being released to work by his treating physician in late February 2002, and the fact that plaintiff had no problems when he did return to work. Tr. 18. Indeed, in early February 2002, plaintiff's treating physician reported that he was going to start light duty work shortly. Tr. 162. Three weeks later, plaintiff reported he had been "back to work without any problems." Id. His treating physician thus found he could return to his "regular work schedule." Id. Plaintiff argues that this was merely a work trial period, which cannot be viewed as evidence of a disability. He also notes that his earnings were so low during this period, that he should not be penalized for having engaged in an unsuccessful work attempt. While it may be that a trial work period and unsuccessful work attempt may not be used as evidence of disability, the fact that plaintiff was able to return to work without no physical problems, certainly does impact his credibility regarding his alleged limitations. Indeed, it appears plaintiff stopped working at the time not due to any physical impairment, but because he was laid off due to the fact that the company he work for was sold. Tr. 236.

Plaintiff further takes issue with the ALJ's findings that he "was functioning well enough to climb a ladder" in early June 2004, and made bird houses as a hobby negatively impacted his credibility. Tr. 20, 22. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a

ORDER
Page - 13

work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id. Plaintiff asserts that the evidence in the record is insufficient to show he was able to work.

The Court agrees that the record does not clearly show that one instance where plaintiff climbed a ladder is indicative of an ability to work, especially where, as here, it was noted that he fell off that ladder. Tr. 332. As pointed out by plaintiff, this incident actually appears to be consistent with medical evidence in the record indicating, and the ALJ's own findings, that he cannot climb ladders. Tr. 24, 159, 289, 295. On the other hand, the Court finds the ALJ was not necessarily remiss in discounting plaintiff's credibility on the basis of his bird house hobby. Plaintiff asserts there is no evidence in the record as to the time or effort that was required in performing this activity. However, while plaintiff testified that he performed this activity occasionally, other evidence in the record indicates he may have done this in the afternoons on a more daily basis. See Tr. 238, 276, 366-67. Further, it is reasonable to assume that building birdhouses requires the expenditure of more than a minimal amount of time and labor.

In any event, these were not the only activities the ALJ noted that plaintiff appeared to be engaging in that compromised his credibility. For example, the ALJ pointed out that plaintiff reported in late March 2002, that he had "shoveled two dump truck loads of gravel," which one can hardly argue does not require the ability to exert a significant amount of physical effort. Tr. 18, 207. The ALJ further noted that plaintiff was able to cook, shop, clean, drive, do light yard work, perform other "projects around the house," such as fixing light bulbs, painting and cutting the grass, and engage in "a range of activities that suggested he could function relatively independently." Tr. 21, 238. These findings are supported by substantial evidence in the record. See Tr. 233, 238, 276.

The ALJ also discounted plaintiff's credibility because in requesting reconsideration of the denial of his disability benefits application, he stated that he did not feel he "could start a new career at his age," and that he "wanted a favorable disability decision so that he could get retirement benefits from his union which included full medical benefits." Tr. 22, 111. The ALJ further noted that he was receiving "$2800 a month from L&I," and had "not undertaken vocational rehabilitation which was offered" to him. Tr. 22A. The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020

(9th Cir. 1992).

Plaintiff first states that it is not clear the ALJ realized the statement in his reconsideration request the ALJ referred to was really a letter to the Washington state Department of Labor and Industries. While this does appear to be the case, the mere fact that the statements contained therein were not directed at the Social Security Administration, does not mean those statements cannot be used as evidence of a lack of motivation to work or of secondary gain. Plaintiff next argues evidence of his L&I earnings are irrelevant to the issue of secondary gain, because he was merely concerned with obtaining medical benefits so that he could continue to be treated for his impairments. However, it is not clear that this is what plaintiff actually meant when he wrote that letter. Further, it was equally plausible for the ALJ to interpret the statements made by plaintiff as a desire not only to receive such benefits, but to stop working, particularly in light of his statement that he did not feel capable of starting a new career.

In any event, at most, the statements plaintiff made in that letter can be said to be ambiguous on the issue of motivation or secondary gain. An ALJ's credibility determination, however, may not be reversed where that determination is based on contradictory or ambiguous evidence. See <u>Allen</u>, 749 F.2d at 579. In addition, plaintiff's argument ignores the ALJ's other finding that plaintiff declined to undertaken any of the vocational rehabilitation offered to him, further indicating a lack of motivation to return to the work force. This certainly constitutes a valid reason for discounting plaintiff's credibility. Accordingly, the ALJ did not err in discounting plaintiff's credibility due to secondary gain issues here.

The ALJ further found the fact that plaintiff became impatient and left a hospital in Seattle to which he had been for emergency treatment and evaluation of his injured foot in late August 2002, negatively affected his credibility. Tr. 16-17. Plaintiff argues the evidence in the record regarding this incident does not provide a sufficient basis for discounting his credibility, because there is no indication as to when he left the hospital or why he did so. It appears, however, that plaintiff decided to leave the hospital by the end of the following day because he had "not had any food since the morning of" the previous day. Tr. 303-04. He also apparently "elected to leave the hospital and seek care closer to home." Tr. 304. The Court agrees this does not necessarily impact plaintiff's credibility, as it appears plaintiff had been waiting treatment for a considerable amount of time without sustenance, and followed up with treatment within a short period of time after he left the hospital. See <u>id.</u>

Plaintiff also correctly criticizes the ALJ's determination to discount his credibility for fearing that his right foot might be amputated, when there was no objective medical evidence in the record to support the possibility of a foot amputation. Tr. 22. As plaintiff points out, while the record may have been devoid of such evidence, it was not necessarily unreasonable for plaintiff to have feared further harm to his right foot, given the objective medical evidence in the record concerning the extensive injuries he received to that foot. That is, the mere fact that no medical source specifically has indicated a need for amputation, does not necessarily mean a claimant's fears of such are insincere.

Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility were improper, does not render the ALJ's credibility determination as a whole invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148. The Court further notes the ALJ provided an additional reason for discounting plaintiff's credibility, pointing out that his left elbow impairment "healed remarkably well." Tr. 18. The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The Court thus finds the ALJ did not err in finding plaintiff overall to be not fully credible.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity Was Proper

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff had the following residual functional capacity:

> He can occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and/or walk for two hours in an eight[-]hour day, and sit for six hours in an eight-hour day. He can do unlimited pushing and pulling. He can occasionally climb ramps and stairs, balance, and crouch. He cannot climb ladders, ropes, or scaffolds. He can only do occasional reaching with his left hand. He needs to avoid concentrated exposure to vibration and hazards. He can only do 90% extension with his left arm, and cannot use it repetitively. He cannot walk, stand, or sit for more than one hour at a time.

Tr. 24. Thus, the ALJ found plaintiff to be capable of a significant, but not full, range of light work. Id.

Plaintiff argues this residual functional capacity assessment is erroneous, because, as noted above, the ALJ found him to be unable to walk, stand or sit for more than an hour at a time. Plaintiff also argues the ALJ ignored one of the non-examining consulting medical source opinions in the record, which, he asserts, limited him to sedentary work. The Court disagrees. First, the ALJ's assessment of his residual functional capacity adopts all of the physical functional limitations contained in the particular medical source opinion to which plaintiff refers. See Tr. 288-90. Light work is defined in relevant part by the Social Security Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Thus, given the fact that the above limitations indicate plaintiff is capable of sitting most of the time with unlimited pushing and pulling, indeed it appears, as the ALJ found, that he would be able to perform a significant range of light work.

Second, the mere fact that the ALJ found plaintiff could sit, walk and stand for no more than one hour at a time is not inconsistent with a finding that he was capable of performing a significant range of light work. Plaintiff, citing to Social Security Ruling 83-10, argues that because "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and the ALJ limited him to walking and/or standing for only two hours in an eight-hour workday, he is precluded from performing a full range of light work. SSR 83-10, 1983 WL 31251 *6. This argument is without merit. As noted above, the ALJ found plaintiff able to perform a significant, but not full, range of light work. In addition, a claimant also will be deemed capable of performing light work if he or she can sit

most of the time with at least some pushing or pulling. As can be seen, plaintiff's exertional limitations fall within this aspect of light work. As such, the ALJ did not err here.

V.  **The ALJ Properly Found Plaintiff Capable of Performing Other Work Existing in Significant Numbers in the National Economy**

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as he included in his assessment of plaintiff's residual functional capacity. Tr. 380. The vocational expert testified that based on the limitations contained in the hypothetical question, there were other jobs plaintiff could perform. Tr. 380-83. Based on the vocational expert's testimony, the ALJ found plaintiff capable of performing other jobs existing in significant numbers in the national economy. Tr. 22A-24. Plaintiff argues that because the vocational expert's testimony was based on him having the ability to perform light work, that testimony has no evidentiary value. However, as discussed above, the vocational expert's testimony was based on a hypothetical question that was substantially similar to the residual functional capacity with which the ALJ assessed plaintiff. Because, also as discussed above, the ALJ did not err in making that assessment, his findings here were proper as well.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is AFFIRMED.

DATED this 29th day of December, 2006.

*Karen L. Strombom* (signature)
Karen L. Strombom
United States Magistrate Judge